

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00233-CV

Natalie **SCHWARZ**,
Appellant

v.

**SCHWARZ WEBB HOLDINGS, LTD.**, Roger J. Schwarz, Benjamin Joseph Schwarz and
Isaac Scott Schwarz,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2018-CVG-002345-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:  Rebeca C. Martinez, Chief Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
Velia J. Meza, Justice

Delivered and Filed: July 8, 2026

AFFIRMED

This is an appeal from a final judgment that enforces a Rule 11 agreement between three

siblings — Natalie, Trey, and Joe Schwarz[1] — who sought to partition real property. In five issues,

Natalie argues that the trial court erred in granting Trey and Joe a summary judgment because: (1)

---

[1] "Trey" Schwarz is Harry "Trey" Schwarz, and he transferred his interest to Marybeth Schwarz as trustee of the S&R Webb County Trust. Joe Schwarz's interest is now held by his three sons — Benjamin, Joseph, and Isaac Scott — and Schwarz Webb Holdings, Ltd. For simplicity, we refer to the brothers as "Trey and Joe."

the Rule 11 agreement fails to adequately describe the real property she was apportioned in accordance with the statute of frauds; (2-3) the Rule 11 agreement is indefinite and ambiguous; (4) Trey and Joe failed to establish as a matter of law that Natalie did not pay her share of the surveying fees; and (5) the trial court abused its discretion in refusing to grant Natalie leave to file additional summary judgment evidence the day before the summary judgment hearing. We affirm.

## I. BACKGROUND

Natalie, Trey, and Joe each inherited an undivided, one-third interest in the Pescadita Ranch, an approximately 8,000-acre tract of land in Webb County, Texas. The Pescadita Ranch encompasses an approximately 460-acre tract of land commonly referred to as the "test track." The siblings, along with other family members, co-own the test track. In 2018, Natalie sought a judicial partition of the Pescadita Ranch under Chapter 23A of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 23A.001. In 2021, the trial court signed a decree ordering partition and appointing commissioners.

After two slates of commissioners, the siblings remained at an impasse regarding how to partition the Pescadita Ranch. At a status conference, the trial court offered to host an informal mediation. The parties agreed, and the trial court later conducted a mediation. As a starting point, the trial court used an aerial photograph of the Pescadita Ranch that had three proposed shares demarcated by Valbridge Property Advisors.[2] The trial court interlineated and annotated parts of Share 1 (Natalie's share, demarcated by a black line in the Valbridge photograph) and Share 2 (Trey's share, demarcated by a blue line). The interlineation and notes at the center of this dispute, as typewritten in Trey and Joe's brief and unobjected-to by Natalie, provide:

---

[2] Valbridge is a real estate appraisal firm that the trial court had appointed earlier in the dispute to help determine the fair market value of the property.



The trial court announced the Rule 11 agreement[3] on the record, stating:

> The parties have conducted a settlement conference with their attorneys, and it looks like we've been able to work on settlement for this case. I am going to read it into the record, and I'm also submitting an exhibit into the record with the partition lines that have been agreed to by the parties. There are going to be some slight changes, probably, when the final survey gets done, just because of the tweaks of the features of the road, but here it goes, Counsel:
>
> All right. So, the parties have agreed that Plaintiff, Natalie Schwarz, receive the east tract of the property known as Share Number 1, according to the Valbridge Property Advisors Partition Exhibit marked as "A," and it is the one marked as "Share Number 1." Share Number 2 will be going to [Trey]; and, Share Number 3 will be going to Mr. Joe Schwarz; and, as for Share Number 1, it's going to be

---

[3] TEX. R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.").

configured in the amount of 2,912 acres, plus 2-2-3-1. So, it's 2912.2231; and so, after the parties negotiated today, they've adjusted a little bit of the acreage.

The Defendants [Trey and Joe] have agreed to give their sister, the Plaintiff, their 1/6th ownership of that test tract, and so some of that additional acreage will result in the acreage coming off of the bottom, being reconfigured. So, the total acreage will be that 2,912; and then, she will also have the corner frontage acreage in exchange for giving her brother, [Trey], the bottom corner acreage as I have in Exhibit A; and, that's to make sure that he has access for a road; and she will also have access from the main gate to the test track. The access will be for her and her use only. If she sells the ranch in the future, that access or easement would go away.

Later at the settlement hearing, the parties, including Natalie's counsel, discussed the expenses associated with the post-settlement survey:

| NATALIE'S COUNSEL: | What other surveying other than what is already owed? |
|---|---|
| TREY'S COUNSEL: | Well, there is no actual survey, like the metes and bounds for the purposes of doing these partition deeds. We need a description. |
| COURT: | Right. For the deed. So, they need to be paid up because they are owed a balance. |
| TREY'S COUNSEL: | That's going to be some work, and I don't have a number. |
| NATALIE'S COUNSEL: | So, the additional surveying costs to survey these three shares for the Valbridge proposal that we are talking about, that's going to be paid . . . [ellipses in original] |
| COURT: | 1/3, 1/3, and 1/3. Yes. |

At the conclusion of the hearing, Natalie personally thanked the trial court:

| NATALIE: | You know what? I was so glad to finally have this time with you. |
|---|---|
| COURT: | Absolutely. |
| NATALIE: | You know why? I was just was so impressed with you this entire time. |

COURT:                    Thank you.

The trial court asked the parties to coordinate with the court coordinator on a date for the trial court to enter the final judgment.

After the settlement hearing, James Ornelas, a land surveyor, reviewed the settlement hearing transcript and "Exhibit A." Ornelas conferred with all counsel in an attempt to prepare a survey with a metes and bounds description of the final partition. Ornelas' survey of the hotly-contested area between Natalie's and Joe's shares as compared to Exhibit A provides:

**Exhibit A**                    **Ornelas' Survey**



At the hearing for entry of final judgment, Natalie's counsel indicated that Natalie had issues with the settlement. Counsel for Trey summarized the conflict:

> Your Honor, the issue became — just to clarify — we met with the surveyors several times, and here's the issue — and if we can clear this up today, I think we're done — but they are contending that their acreage that they receive should all be fee simple acreage; and in the settlement agreement that was read into the record, it's very clear that they're getting acreage out of the test tract, which is undivided acreage.
>
> So, that's how they get to the total amount that they were awarded; and so, we've been sending in e-mails and asking them, "look, are you going to recognize that?" It's in the transcript, you know, it's very clear. It's also written on Exhibit A. It's very clear where, you know, what — which tracts everyone is going to get. That's Exhibit A to the transcript.

> So, if they are here today saying that, yes, they understand, that part of the acreage that they're going to get is that test tract acreage, we can get the surveys done (snaps fingers) like that.

Natalie's counsel indicated that she would not proceed with the Rule 11 agreement. Trey's counsel indicated that he would seek enforcement of the Rule 11 agreement.

Thereafter, the brothers amended their pleadings to assert a claim for breach of settlement agreement. On January 27, 2025, the brothers filed a motion for traditional summary judgment on their breach of settlement agreement claim. The brothers attached to their motion, among other things, the transcript from the settlement hearing and a survey signed by Ornelas on January 27, 2025. That survey provides:



Natalie's written summary judgment response argued that the Rule 11 agreement violates the statute of frauds and is ambiguous and indefinite. Natalie attached to her response an affidavit by Paul T. Carey, a land surveyor. Carey averred:

I have reviewed the transcript of the informal mediation on August 13, 2024, the attached aerial photo with colored marking and handwritten notations, and the James Ornelas metes and bounds descriptions and survey of three proposed shares attached as exhibits' "A," "A-1," and "I" that are attached to defendants' motion for summary judgment filed on January 27, 2025. The Ornelas metes and bounds descriptions and resulting survey in exhibit I could not have been created solely from the transcript and photo in exhibits A and A-1.

The transcript and aerial photo are missing the following descriptions or conflict with the Ornelas metes and bounds descriptions and survey in the following particulars: . . . the aerial photo includes acreage that is outside but adjoining the partition property and owned by Joe Schwarz but its size and dimensions are not defined, but the Ornelas plat describes a proposed 135.64-acre tract consisting of a parallelogram connected by a strip to a larger L-shaped tract. The proposed 135.64-acre tract wholly owned by Joe Schwarz was not originally involved in this partition proceeding nor was it conveyed by deed into the Pescadita Ranch.

Shortly before the summary judgment hearing, Natalie's counsel deposed Ornelas. Ornelas was asked and answered:

Q.   So is it fair to state, Mr. Ornelas, in your plat that we're talking about here, January '25 plat, what we have here in green in the left-hand corner is included in Share 1, Tract 1 in yellow within the boundaries of it?

A.   Yes, sir.

Q.   And that is something you did pursuant to a meeting you had with myself and maybe [Joe's counsel] and [Trey's counsel]?

A.   Yes, sir.

JOE'S COUNSEL:   Objection, form.

Q.   By NATALIE'S COUNSEL:   So the inclusion of this acreage that you've shown us in green that's on the south side of Share 1, that's not something you got from the aerial photo or the court transcript, correct?

JOE'S COUNSEL:   Objection, form.

UNIDENTIFIED SPEAKER:   Objection.

Q.   By NATALIE'S COUNSEL:   Correct?

A.   It's there.

The same line of questions and answers were repeated for other aspects of Ornelas' January 27, 2025 survey.

The trial court considered Trey and Joe's motion for summary judgment, Natalie's response, and Trey and Joe's reply. It denied Natalie leave to consider the deposition of Ornelas, which she filed the day before the summary-judgment hearing. In an interlocutory summary judgment, the trial court held that Natalie breached the settlement agreement as a matter of law, and therefore, Trey and Joe were entitled to specific performance. The trial court later signed a final judgment that partitioned the Pescadita Ranch in accordance with Ornelas' January 27, 2025 survey. Natalie timely appeals.

## II. STANDARD OF REVIEW

The movant for traditional summary judgment bears the burden of demonstrating that (1) no genuine issue of material fact exists, and (2) it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a)(1); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to respond to the motion and present any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *see also Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We must affirm a summary judgment if any of the grounds asserted in the motion are meritorious. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

A party who raises an affirmative defense in an attempt to defeat a motion for summary judgment must either (1) present a disputed fact issue on the opposing party's failure to satisfy his own burden of proof, or (2) establish at least the existence of a fact issue on each element of his

affirmative defense by summary judgment evidence. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

### III. BREACH OF CONTRACT

A movant for summary judgment on a breach of contract claim based on a Rule 11 agreement is required to establish entitlement to judgment as a matter of law on each element of the breach of contract claim except the amount of damages. *Dickason v. Hunt*, No. 10-21-00093-CV, 2023 WL 1444177, at *5 (Tex. App.—Waco Feb. 1, 2023, no pet.) (mem. op.); *Tomorrow Telecom, Inc. v. Silvas*, No. 07-20-00100-CV, 2021 WL 2461129, at *2 (Tex. App.—Amarillo Jun. 16, 2021, no pet.) (mem. op.). A breach of contract claim requires pleading and proof of (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of that breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

Natalie generally argues that Trey and Joe failed to conclusively establish the first element of their claim for breach of contract based on a Rule 11 agreement because the statute of frauds, indefiniteness, or ambiguity precluded the existence of a valid contract. Trey and Joe generally argue that the affirmative defense of the statute of frauds does not apply and that the Rule 11 agreement was neither indefinite nor ambiguous.

### A. Rule 11 Agreements & the Statute of Frauds

In Natalie's first issue, she argues that the Rule 11 agreement fails to satisfy the statute of frauds. Specifically, Natalie complains that the Rule 11 agreement does not adequately describe her boundaries and Ornelas' January 27, 2025 survey cannot save the Rule 11 agreement because it was not a "then-existing writing," as the statute of frauds requires for the conveyance of real property. Natalie emphasizes that the conveyance of some of Joe's land necessitates application

of the statute of frauds. She references, *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972), a dispute regarding a conveyance, for its holding that "[t]o be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." Natalie references *Zanderson v. Sullivan*, 44 S.W. 484, 485 (Tex. 1898), and *Eberling's Estate v. Fair*, 546 S.W.2d 329 (Tex. App.—Dallas 1976, writ ref'd n.r.e.), for her contention that the statute of frauds applies to Rule 11 agreements.

In *Zanderson*, 44 S.W. at 485,

> The contract which it is claimed was made between Zanderson and Sullivan by the proposition submitted by the latter, and accepted by the former, is not a contract purely for the partition of the property which belonged to them jointly; but, considered in connection with the parol evidence which was admitted, it contemplated a partial partition by setting apart one-half of the frontage to Sullivan, and a purchase from him of an interest in the remaining half, which was upon the corner of the two streets, for which Zanderson was to pay the sum of $1,000.

*Id*. The Texas Supreme Court held that:

> [W]e see that when the contract is analyzed it is purely and simply a proposition to buy from Sullivan his interest in the corner lot, after setting apart to him the inside lot, and, being a contract for the purchase of real estate, it must contain within itself all of the necessary elements of such a contract, and such requisites cannot be supplied by parol proof.

*Id*.

In *Eberling's Estate*, 546 S.W.2d at 331, the parties exchanged four letters in an attempt to settle a real estate dispute. In the third letter, the defendants mentioned for the first time a 177-acre tract that contained a house. *Id*. at 332–33. They insisted that the area "should be reduced by a sufficient area to accommodate the house which is situated partially on the subject tract." *Id*. "Although plaintiffs agreed in the fourth letter that an exception should be made for this purpose,

- 10 -

the parties [] never c[a]me to an agreement concerning the exact area or location of the land to be excepted." *Id*. The court explained:

> Our analysis of the uncertainty of the contract with respect to the size and location of the 'area sufficient to accommodate the house' is applicable also to the matter of sufficiency of the written description under the Statute of Frauds.
>
> . . .
>
> [T]he agreement contained in the letters, as interpreted by the trial court, constitutes more than a partition. It does not purport merely to divide the 177-acre tract between the parties in accordance with their previously undivided interests. It purports to be an executory contract whereby plaintiffs agree to 'buy' and defendants agree to 'sell,' for a stated consideration in money, all of defendants' interest in the entire 177-acre tract, except an insufficiently defined area around the house. Clearly, this is a 'contract for the sale of real estate' within the Statute of Frauds, TEX. BUS. & COMM. CODE ANN. § 26 .01(b) (4) (Vernon 1968), and in the absence of a proper written description of the excepted tract or written data which, if applied to the land, would identify the excepted tract with reasonable certainty, the agreement cannot be judicially enforced.

*Id*. at 334–35.

Trey and Joe fault Natalie for relying primarily on authority relating to conveyances rather than partitions. The brothers emphasize the holding in *Houston Oil Company of Texas v. Kirkindall*, 145 S.W.2d 1074, 1077 (Tex. 1941), that "[n]ot being a conveyance, the parol partition is not within the purview of the statute of frauds[.]"

Our research yields authority beyond *Zanderson* and *Eberling's Estate* on the interplay between Rule 11 agreements and the statute of frauds. In *Dodd v. Joy*, No. 04-97-00889-CV, 1999 WL 140163, at *1 (Tex. App.—San Antonio Mar. 17, 1999, pet. denied) (op., not designated for publication), the parties settled a real estate dispute by a written Rule 11 agreement that provided for the appointment of appraisers to determine the value of improvements to the property. One of the parties later sought to withdraw consent for the agreement. *Id*. We observed that a complete description of the property in question was contained in one of the parties' pleadings, which was

referenced by the settlement agreement. *Id.* We held that this was sufficient to bring the Rule 11 agreement within the statute of frauds. *Id.*

Our decision in *Dodd* relied on *Galerie D'Tile, Inc. v. Shinn*, 792 S.W.2d 792 (Tex. App.—Houston [14th Dist.] 1990, no writ). In *Galerie*, as in this case, the parties entered into an oral Rule 11 agreement in open court, on the record, to settle a real estate dispute. *Id.* at 792–93. One of the parties withdrew consent and attacked the judgment that enforced the agreement on, among other things, statute of frauds grounds. Our sister court rejected the argument, holding:

> Moving to appellant's argument that the in-court agreement under Rule 11 violated the statute of frauds because of the lack of a legal description of the real property to be conveyed, we find the equities of the situation remove the case from the customary and usual operation of a statute of frauds. The policy and reasoning against parol conveyances of land is to avoid uncertain and unsettled land titles resting in parol, fraud and perjury. We see no possibility in the case before us that the Rule 11 agreement could lead to any uncertain or unsettled land titles. This court has on several occasions commented that TEX. R. CIV. P. 11 is an immensely powerful rule of procedure and that it is in the nature of a statute of frauds in its own right. The parties show in the agreement announced by the two officers of the court, representing their clients, that they had full knowledge of the property to be conveyed by deed, even though the description "4207 West Alabama" is silent as to city, county, or state. Appellants' pleadings show Galerie D'Tile, Inc. has its principal place of business and registered office in Houston, Harris County, Texas, and that appellee Shinn is a resident of that city, county, and state. There is a reasonable inference that the property is in Houston, Texas, at 4207 West Alabama. *If necessary, extraneous evidence could be brought in to aid in drawing a deed with the proper description of the property. If there was a misdescription of the property (and not a mistake of its identity), the agreement is subject to reformation. The agreement does not violate any statute of frauds.*

*Id.* at 794–95 (citations omitted; emphasis added).

Our most recent pronouncement on the interplay between a Rule 11 agreement and the statute of frauds is that the agreement must identify the property with "reasonable certainty." *See In the Estate of Spiller*, No. 04-18-00522-CV, 2019 WL 2360100, at *3 (Tex. App.—San Antonio Jun. 5, 2019, pet. denied) (mem. op.) ("Assuming without deciding the Statute of Frauds applies to the settlement agreement, we consider whether the agreement identifies the Pipeline Pasture

with reasonable certainty."); *see also Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 752–53 (Tex. App.—Houston [1st Dist.] 2014, no pet.).[4]

Returning to Natalie's argument, her reliance on *Zanderson* and *Eberling's Estate* for the proposition that the Rule 11 agreement in this case must rely on a "then-existing" document is misplaced. The courts in those cases homed in on the fact that the real property in dispute was the subject of a sale gone wrong, not a settlement. In *Eberling's Estate*, 546 S.W.2d at 332, the third and fourth letters detail a "$750 price per acre." In *Zanderson*, 44 S.W. at 485, the price was $1,000. Natalie points to no dollar amount contemplated for either Joe's land or the test tract. One of the goals agreed to by all the siblings was that Natalie was to receive 2912.2231 acres to settle the partition dispute. To effectuate this goal, the parties agreed to transfer some of Joe's separate property to Natalie, as evidenced by the arrows and interlineations:



---

[4] In *General Metal Fabricating Corp.*, 438 S.W.3d at 752–53, the court held:

> This argument rests on the premise that the Rule 11 agreement is a contract for the sale of real estate and thus subject to the statute of frauds . . . Without deciding whether that premise is sound, we conclude that the Rule 11 agreement, together with the writings referenced by it, describes the property in a manner sufficient to satisfy the statute of frauds.

Ornelas' testimony that he conferred with all counsel in preparing his January 27, 2025 survey is tempered by his insistence that "[i]t's there" — meaning the Rule 11 agreement is reflected in his final survey. Moreover, the parties envisioned a final survey in order to provide for "the tweaks of the features of the road" and draft the partition deeds. Carey's affidavit testimony is equally unavailing. At the time of the settlement hearing, Natalie knew or should have known the interlineated portion of Joe's separate tract was not part of the Pescadita Ranch because it was not within either the black or blue demarcation lines in the Valbridge aerial photograph. Carey's affidavit concedes as much by stating that Joe's tract was "adjoining the partition property." Assuming without deciding the statute of frauds applies to the Rule 11 agreement and the trial court abused its discretion by not granting Natalie leave to file Ornelas' deposition, the trial court's on-the-record pronouncements together with the annotations on Exhibit A provide Natalie with a reasonably certain description of the share that she agreed to take. *See In the Estate of Spiller*, 2019 WL 2360100, at \*3; *Gen. Metal Fabricating Corp.*, 438 S.W.3d at 752–53.

We overrule Natalie's first issue.[5]

## B.    Indefiniteness & Ambiguity

In Natalie's second and third issues, she contends that the Rule 11 agreement is indefinite and/or ambiguous[6] because the partition boundaries are undefined, it is unclear how Joe's separate land may or may not be involved, and how the test track affects the agreement. Trey and Joe fault Natalie for not referencing any authority that definitively identifies what terms are essential to an agreement to partition real property. They reference *General Metal Fabricating*, 438 S.W.3d at 752 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. a), as support for their contention

---

[5] Having considered Ornelas' testimony, we need not address Natalie's fifth issue — that the trial court abused its discretion by denying her leave to consider Ornelas' deposition testimony.

[6] Although Natalie raises indefiniteness and ambiguity as separate issues with separate argument sections in her brief, Natalie raises the same arguments for each issue. We collapse our analysis for brevity.

that the Rule 11 agreement is not indefinite. As for Natalie's ambiguity contention, the brothers argue that she confuses silence for ambiguity. They reference *Maxey v. Maxey*, 617 S.W.3d 207, 219–223 (Tex. App.—Houston [1st Dist.] 2020, no pet.), as support for this contention.

In *General Metal Fabricating*, the court of appeals held that "the fact that the parties have left certain terms open for negotiation in an agreement that they intend to be binding does not make the agreement indefinite; 'courts endeavor, if possible, to attach a sufficiently definite meaning to' an agreement intended to be binding, 'even though one or more terms are missing or are left to be agreed upon . . . . Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract.'" *Gen. Metal Fabricating Corp.*, 438 S.W.3d at 752 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. a).

In *Maxey*, two sisters agreed to split inherited real property "West 50%" to one sister and "East 50%" to the other sister. *Id*. at 211. The probate court held that the agreement was ambiguous, and at trial, allowed parol evidence. *Id*. at 213–14. The court of appeals held that the trial court may have confused silence in the settlement agreement's provisions regarding how the property was to be divided with ambiguity. *Id*. at 222. Our sister court emphasized that ambiguity in contract language is not to be confused with silence. *Id*. It held the settlement agreement provided that the property was to be divided into two tracts of equivalent value. *Id*. at 223. It further held that this language can be given certain and definite legal meaning, and it is not susceptible to more than one reasonable interpretation. *Id*.

Returning to Natalie's argument regarding the inclusion of Joe's separate tract, she contends that the transcript and Exhibit A contradict each other. Reading them together, they do

not. The transcript provides that Natalie shall receive 2,912.2231 acres. While the transcript may not specify a transfer of "Joe's separate tract," the arrows and interlineations do.

A plain reading of Exhibit A also dooms Natalie's argument regarding the undivided test tract acreage that she received from Trey and Joe. Exhibit A contains a handwritten annotation stating, "[Trey and Joe] all give 1/3 interest to be recouped from acre [sic] at the bottom" with arrows pointing over to the test track and down to underneath Share 1. Natalie complains that the test tract acreage is less valuable because it is an undivided interest and as such should not count acre-for-acre toward the total of 2,912.2231 acres. Assuming without deciding that Natalie's differential valuation is true as a matter of law,[7] such a principle existed at the time she agreed to take her brothers' undivided interest in the test tract to meet the 2,912.2231 raw acreage total. Nevertheless, Natalie entered into the Rule 11 agreement.

Natalie's argument that the partition boundaries in the Rule 11 agreement are too general is a reiteration of her statute of frauds contention. Having already thoroughly analyzed Natalie's statute of frauds contention, her related ambiguity and indefiniteness arguments likewise fail.

We overrule Natalie's second and third issues.

## C.    Natalie's Portion of the Surveying Fees

In Natalie's fourth issue, she complains Trey and Joe failed to establish as a matter of law that she did not pay her share of the surveying fees. Natalie fails to direct us to any portion of either the interlocutory summary judgment order or the final judgment that finds she did not pay her one-third share of the surveying fees *and* orders her to pay them. *See* TEX. R. APP. P. 38.1(i)

---

[7] Natalie provided no evidence regarding her deferential valuation contention as part of her summary judgment response. On appeal, she references *Estate of Bonner v. United States*, 84 F.3d 196, 197 (5th Cir. 1996) (per curiam), for its pronouncement that "courts have consistently recognized that the sum of all fractional interests in a property is less than the whole and have upheld the use of fractional interest discounts in valuing undivided interests." *Bonner* dealt with a question relating to the federal estate tax at the time.

("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). The summary judgment order does not mention surveying fees. The final judgment provides, "[a]ll expenses of surveys, Appraisers, or Commissioners shall be paid 1/3 by Natalie Schwarz" and one-third by each brother. The Rule 11 agreement provides that Natalie was to pay one-third of the surveying fees, and this Rule 11 agreement provision comports with the corresponding provision in the final judgment. Accordingly, the trial court did not err in rendering judgment that Natalie pay one-third of the surveying fees.

We overrule Natalie's fourth issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

Rebeca C. Martinez, Chief Justice